# GEORGE MARDORF v. DULUTH SUPERIOR TRANSIT COMPANY.[1]

January 31, 1936.

No. 30,714.

*G. A. E. Finlayson,* for appellant.
*A. L. Agatin* and *Courtney & Courtney,* for respondent.

LORING, JUSTICE.

In a suit for personal injuries plaintiff recovered a verdict which the trial court set aside and then ordered judgment for the defendant notwithstanding the verdict. On appeal to this court the order was reversed. 194 Minn. 537, 261 N. W. 177. The defendant had combined its motion for judgment notwithstanding the verdict with

[1]Reported in 265 N. W. 32.

the motion for a new trial, and thereupon the motion for a new trial was presented to the trial court, which denied it. This appeal is taken from the latter order.

The facts presented by the record are fully set forth in the opinion rendered by this court when it was considering the motion for judgment notwithstanding the verdict.

Defendant operates a street railway in Duluth, and one of its lines runs to a section of the city known as Woodland, where its cars turn on a loop. Cars on this line are one-man cars, and passengers are admitted at the front end where the motorman-conductor is stationed. There is a car stop at the beginning of the loop and another usual stopping place after the loop has been completed. The evening of May 7, 1933, was dark and somewhat rainy. At about 9.30 the plaintiff and his wife went to the car stop to board one of the defendant's streetcars. They say they found a car there with the doors closed, that they went to the doors and saw the motorman at his controls and that they then knocked on the door but that he immediately started the car and went about 25 or 30 feet and then stopped again, opened the doors for a short period of time, during which they hurried again toward the front of the car, when it started, and, being on the turn of the loop, the overhang at the rear of the car swung against the plaintiff, causing the injuries for which he now seeks recovery.

A young woman named Zettel was a passenger in the car, sitting about midway on the right-hand side of the car. As the car started the first time she saw a man and woman on the outside just as their heads came opposite where she was sitting, and she spoke to the motorman, saying that there were "a couple passengers coming." The car was then in motion, but the motorman immediately stopped it. On the trial, after proving that Miss Zettel saw these people approaching and that she had stated to the motorman that there were a couple of passengers coming, counsel for defendant inquired:

Q. "Now, after the streetcar stopped the second time did it wait a while? * * *

A. "Yes, it did.

Q. "Did it wait? Did you say something further to the motor-man?

Mr. Finlayson: Q. "About these passengers, these people?"

To this the plaintiff objected on the ground that it was hearsay. The objection was sustained, and the defendant offered to prove that after the streetcar stopped the second time and waited a certain period "she [Miss Zettel] then stated to the motorman that she guessed the people had gone the other way." Plaintiff's objection to this offer was sustained and an exception taken. Miss Zettel then testified that after she spoke to the motorman the second time he started up the car and went around the loop. It was by this starting of the car that plaintiff was injured. The motorman's testimony was to the effect that when Miss Zettel first spoke to him he stopped the car, stood up, and looked along the side of the car. He denied that he opened the gates but said that he waited about 30 seconds for the passengers to appear after Miss Zettel's second remark and then went on. He also denied that plaintiff and his wife came to the front door of the car and knocked at about the time or just before he was starting the first time. His mirror was of no use to reflect the view along the side of the car on account of the rain that obscured the face of it. He claimed that as he stood up and looked back he could have seen any passengers within ten feet of the front doors of the car. The question before the court was whether the motorman acted with that degree of care with which he should have acted, under the circumstances, and we think that on the record this was a proper question for the jury; but we also think that in passing upon this question the jury were entitled to know that Miss Zettel had said to him that she guessed that these people had gone the other way (meaning, of course, to the other usual stopping place). The fact that she used the word "guessed" was not important. This was a mere form of expression, not unusual, as denoting a conclusion from what was observed. She was sitting at a point in the car where her opportunity to observe people on the outside was superior to that of the motorman, and we think it was a matter for the jury to consider whether the motorman was justified in acting upon her observation as reported to

him by her. She was a telephone operator and apparently a person of intelligence. It was at least a matter to be taken into consideration in measuring the degree of care which he exercised. It may be that in the opinion of the jury he should not have relied upon what she said to him although he stated that before acting upon her statement he waited about 30 seconds to see whether the passengers appeared. We think it was prejudicial error to exclude it. It was so intimately connected with the unfortunate occurrence as to be part of the *res gestae*. Her first statement having gone to the jury, the defendant was entitled to have the second one also go to the jury.

Other assignments of error are based upon the assumption that there was no evidence that the motorman knew of the presence of plaintiff when he started the car. Since there was such evidence we refrain from discussing these assignments.

Order reversed and a new trial granted.

I. M. OLSEN, JUSTICE (dissenting).

To me the statement claimed to have been made by the witness Zettel is not shown to be a part of the *res gestae*. It was not some exclamation or statement induced by or in relation to an accident then happening or happening just prior thereto or in reference to any accident. It seems to me to be hearsay. The duty of exercising care rested on the motorman, not on Miss Zettel. That duty he could not delegate to a passenger. Nor could he relieve himself from that duty by relying upon some passenger. Supposing a passenger said to the driver of an automobile, "there is no person on the crossing ahead of us," or, said to the driver, "you can safely drive 60 miles an hour here." Would the driver be excused or relieved from the exercise of ordinary care if he relied on any such hearsay statement? It must be borne in mind that at the time Miss Zettel is claimed to have made the statement no accident had happened.

DEVANEY, CHIEF JUSTICE, took no part in the consideration or decision of this case.